## HAMILTON and others v. CHOUTEAU and others.

*(Circuit Court, E. D. Missouri.  January 17, 1881.)*

1. FEDERAL JURISDICTION — INSOLVENT LIFE INSURANCE COMPANY — RECEIVER OF STATE COURT — POLICY-HOLDERS — STOCKHOLDERS — FRAUD.

  Suit was instituted in a federal court by the policy-holders of an insolvent life insurance company against its stockholders for the fraudulent appropriation of a part of the assets of the company. *Held*, that such court could not assume jurisdiction when the company was in the hands of a receiver of a state court, who was proceeding to collect and administer the assets for the benefit of all the creditors.—[ED.

In Equity.  Demurrer.

This was a bill filed by the policy-holders of the St. Louis Mutual Life Insurance Company for relief against its stockholders. The company, a Missouri corporation, was chartered on the mutual plan, with stock of the par value of $100,000, of which defendants were the owners. Proceedings were commenced in the state court by the insurance commissioner

to wind up the company, after which, on the thirteenth day of December, 1873, its directors, by the sanction of the commissioner and decree of the court, conveyed and delivered the assets of said company to the Mound City Life Insurance Company, a Missouri corporation, in consideration of a covenant on its part that it would re-insure all outstanding risks and pay all liabilities of said St. Louis Mutual Life Insurance Company; and likewise redeem and take up said stock by delivering a like amount of its own stock to the owners, with a right on their part, at any time within one year from the date of said contract of re-insurance, to return said new stock to the Mound City, and receive from it the par value; all of which is alleged to have been done by the defendants, and that defendants received from the Mound City the par value of their stock, which was paid to them out of the assets received of the St. Louis Mutual Life Insurance Company under this contract of re-insurance. The Mound City Life Insurance Company became insolvent, and was unable to keep its agreements of re-insurance, in consequence of which both companies have been declared insolvent by proceedings in the state court, and are now in the hands of their respective receivers, and being wound up under the Missouri law. It is further alleged that the contract of re-insurance was fraudulent and void, and that the money of the St. Louis Mutual Life Insurance Company in the hands of the Mound City was charged with a trust in favor of the plaintiffs, and that the defendants fraudulently agreed to this arrangement so as to be able to realize par for their stock, which was worthless, and should in equity account to plaintiffs for the amount received from the Mound City.

*Robt. Crawford,* for plaintiffs.

*Chire, Jamison & Day,* for defendants.

TREAT, D. J. The demurrer in this case is both general and special. By the terms of the bill it appears that the various insurance companies named are in the hands of receivers duly appointed by a state court of competent jurisdiction, and that their affairs are in the course of judicial administration. If the allegations of the bill are true, as

confessed by demurrer, said receivers are the proper parties to receive whatever may be due by defendants, so that the same may be distributed *pro rata* among the creditors. Undoubtedly, if such a fraudulent scheme existed, as is charged, whereby the parties defendant, for their own private gain, caused the plaintiff and other policy holders to be defrauded of their lawful demands, said defendants should, in a proper proceeding, be compelled to refund for the common benefit. It must be observed, however, that the bill, even in that view, is fatally defective, except on one hypothesis, imperfectly presented. The defendants, it is charged, were respectively stockholders in the St. Louis Mutual Life Insurance Company. Each held a different number of shares. It nowhere appears that said stock was not fully paid up, and consequently that the stockholders were liable for the debts of the company. It is alleged, however, that all the assets of said company were, with their connivance, etc., transferred to the Mound Mutual Company, of whose shares of stock they were to receive a like number to those held in the St. Louis Mutual, subject to be paid off at par by the Mound Mutual; that those shares were so paid off, and the defendants became the respective beneficiaries thereof; and that the only and main source of payment was from the St. Louis Mutual. Practically, the insolvent St. Louis Mutual, through the fraud charged, secured to these conniving stockholders full pay at par for their worthless stock out of the assets which should have been devoted to the payment of its debts.

It is not doubted that under sufficient averments in a proper state of such a case equity would lay its hands upon funds thus fraudulently acquired, and apply them for the benefit of honest creditors. But it is averred that the St. Louis Mutual is now, and has been for years, in the hands of a competent receiver, who is proceeding to collect and administer its assets for the benefit of all creditors. Why, then, should this court (the receiver being no party) undertake to collect and administer a fragment of the assets? Will a chancery court split assets and demands to the extent of upholding as many suits as there may be creditors or items

of assets? Instead of avoiding thereby it would indefinitely create a multiplicity of suits. If this court took charge of this suit it would be compelled to bring in all the parties and take custody of the assets in order that each creditor might receive his *pro rata;* for equality is equity.

The grave question as to jurisdiction remains with reference to the citizenship of the parties. This subject has been considered in several cases this term, and all that need be added now is that the bill is fatally defective.

The demurrer is sustained.